IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DAVID C. FANNIN, et al.,           )
                                   )
            Plaintiffs,            )
                                   )
      v.                           )  Civ. No. 16-641-SLR
                                   )
UMTH LAND DEVELOPMENT L.P.,        )
et al.,                            )
                                   )
            Defendants,            )
                                   )
      -and-                        )
                                   )
UNITED DEVELOPMENT FUNDING         )
III L.P.,                          )
                                   )
            Nominal Defendant.     )


## MEMORANDUM

At Wilmington this 𝒻ⁿᵈ day of December, 2016, having reviewed plaintiffs'[1]

motion to remand and defendants'[2] opposition thereto, the court concludes that remand

is appropriate, for the reasons that follow.

    1. **Procedural background.**  Plaintiffs filed their complaint in the Court of

---

[1]Plaintiffs include David C. Fannin and Lucille S. Fannin, as Co-Trustees of the David C. Fannin Revocable Trust Dated August 3, 1995 and the Lucille Stewart Fannin Revocable Trust Dated August 3, 1995 (collectively "plaintiffs").

[2]Defendants include:  UMTH Land Development L.P.; UMT Services, Inc.; UMT Holdings, L.P.; UMTH General Services, L.P.; United Mortgage Trust; United Development Funding L.P.; United Development Funding IV L.P.; United Development Funding X L.P.; Todd F. Etter; Hollis M. Greenlaw; Michael K. Wilson; Ben L. Wissink; Cara D. Obert; and Melissa H. Youngblood (collectively "defendants").

Chancery of the State of Delaware on July 7, 2016.  *Fannin v. UMTH Land Development L.P., et al.,* Civ. No. 12541-VCMR.  On July 27, 2016, several of the defendants filed a notice of removal to this court based solely on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d).[3]  Plaintiffs filed the pending motion to remand on August 26, 2016.  The court has jurisdiction to determine the instant dispute pursuant to 28 U.S.C. §1331.

  2. **Factual background.**  Plaintiffs assert their claims in their capacity as holders of units of limited partnership interests ("LP Units") in United Development Funding III L.P. ("UDF III" or the "Partnership"), a Delaware limited partnership. Plaintiffs assert the following claims in their complaint:  derivative and class claims for breach of fiduciary duty; a derivative claim for waste; derivative and class claims for breach of the operative partnership agreement (the UDF III Second Amended and Restated Agreement of Limited Partnership, or "Partnership Agreement"); and derivative and class claims for unjust enrichment for the profits obtained from the breaches of fiduciary duty and aiding and abetting breaches of fiduciary duty.  (D.I. 1, ¶¶ 28-29, 263-313)  According to plaintiffs, these claims fall within the scope of certain statutory exceptions to federal jurisdiction under CAFA, because they are based on allegations that defendants disloyally exercised their control of the Partnership to use its assets and capital as part of a Ponzi-like scheme in furtherance of defendants' own special interests and benefits and at the expense of the Partnership and its limited partners, in breach of their Delaware state-law-based fiduciary duties and the

---

[3]Also codified in the removal statute at 28 U.S.C. § 1453.

governance terms of the Partnership Agreement.

Defendants contend that, because plaintiffs' complaint "is replete with allegations relating to allegedly fraudulent conduct and false and misleading representations ostensibly made 'in order that new investor capital could be raised through the sale of securities to retail investors'" (D.I. 15 at 2), such allegations preclude application of the exceptions to CAFA jurisdiction invoked by plaintiffs.

      3. **Standard of review.** CAFA confers original jurisdiction on the district courts over any civil action in which any defendant and any putative class member are citizens of different states and the amount in controversy exceeds $5 million, exclusive of costs and interest. 28 U.S.C. § 1332(d)(2). Plaintiffs do not dispute that these minimal diversity and amount-in-controversy requirements have been met. "[O]nce CAFA jurisdiction has been established, the burden shifts to the party objecting to federal jurisdiction to show that [the asserted statutory] exception[s] should apply." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009).

      4. Plaintiffs at bar assert that CAFA's grant of federal subject matter jurisdiction does not extend to the instant class action, because the action "'solely involves' claims that are within the plain meaning of two of the CAFA jurisdictional exceptions in 28 U.S.C. §1332(d)(9)" (D.I. 7 at 3), namely §1332(d)(9)(B) and (C), which provide as follows:

> (d) Exception. - This section shall not apply to any class action that solely involves a claim . . . (B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or (C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any

3

security (as defined under Section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. § 77(b)(a)(1)) and the regulations issued thereunder).

28 U.S.C. §1332 (d)(9)(B) and (C).[4]

5. The 9(B) exception, also known as the "internal affairs doctrine," "is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs - matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders - because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). *Accord McDermott, Inc. v. Lewis*, 531 A.2d 206, 214-215 (Del. 1987). The Restatement (Second) of Conflict of Laws additionally explains that, under the "internal affairs doctrine," "[t]he local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders. . . ." Restatement (Second) of Conflict of Laws § 309 (1971). *See also Atherton v. FDIC,* 519 U.S. 213, 224 (1997). "Liability will typically be imposed upon directors under [the internal affairs doctrine] . . . for such matters as the fraudulent or negligent mismanagement of the corporation's affairs . . . and unlawfully profiting at the corporation's expense." Restatement (Second) of Conflict of Laws § 309, comment (a). "The phrase 'other form of business enterprise' is 'intended to include forms of business entities other than corporations, including, but not limited to, limited liability companies, business trusts, partnerships and limited partnerships.'" *In re Textainer P'ship Sec. Litig.,* 2005 WL 1791559, at *4 (N.D. Cal.

---

[4]Identical exceptions are set forth in the removal statute, 28 U.S.C. §1453(d)(2) and (3).

July 27, 2005) (citations omitted).

6. The 9(C) exception, also known as the "securities exception," includes within

its scope actions that "solely involve[ ] a claim that relates to the rights, duties (including

fiduciary duties), and obligations relating to or created by or pursuant to any security" as

defined by the Securities Act of 1933 (the "Securities Act"). *See* 28 U.S.C. §

1332(d)(9)(C). The Supreme Court in *Securities and Exchange Comm'n v. W.J.*

*Howey Co.*, 328 U.S. 293 (1946), explained that

> an investment contract for purposes of the Securities Act means a contract,
> transaction or scheme whereby a person invests his money in a common
> enterprise and is led to expect profits solely from the efforts of the promoter
> or a third party, it being immaterial whether the shares in the enterprise are
> evidenced by formal certificates or by nominal interests in the physical
> assets employed in the enterprise.

*Id.* at 298-99. Limited partnerships ordinarily qualify as "investment contracts" as

defined above. *See, e.g., Mason v. Unkeless*, 618 F.2d 597, 599 n.3 (9th Cir. 1980). It

has been recognized as well that "certain duties and obligations of course 'relate to'

securities even though they are not rooted in a corporate document but are instead

superimposed by a state's corporation law or common law on the relationships

underlying that document." *Estate of Pew v. Cardarelli*, 527 F.3d 25, 31 (2d Cir. 2008).

7. Courts have described CAFA as granting "broad federal jurisdiction over class

actions and establish[ing] narrow exceptions to such jurisdiction." *Appert v. Morgan*

*Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012) (citations omitted). *See*

*also Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425,

428-9 (5th Cir. 2014). Although plaintiffs must establish that their action "solely

involves" claims within the statutory exceptions, the language of such exceptions is

5

"expansive" through use of the "broad phrase 'relates to.'" *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.,* 603 F.3d 23, 31 (2d Cir. 2010). Therefore, "the phrase 'solely involves' cannot be stretched so far as to limit the exception in §§ 1332(d)(9) and 1453(d) to class actions that raise no collateral issues and for which there are no affirmative defenses." *Id.* Moreover, "duties superimposed by state law as a result of the relationship created by or underlying the security fall within the plain meaning of the statute, which expressly references 'duties (including fiduciary duties).'" *BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assur. Co.,* 673 F.3d 169, 179 (2d Cir. 2012). "The focus of the inquiry is on the source of the right that the plaintiff[s'] claim seeks to enforce." *Greenwich Fin. Servs.,* 603 F.3d at 32. There is no "bright-line rule" that governs whether an action falls within one of the asserted exceptions; rather, whether application of either exception is proper is adjudged "on a case-by-case basis." *BlackRock Fin. Mgmt. Inc.,* 673 F.3d at 179 n.5.

8. **Analysis.** Plaintiffs contend that their action is a "core Delaware state-law-based fiduciary duty and governance action[ ]" and, therefore, should be remanded to the Court of Chancery. (D.I. 15 at 1) In support of their contention, plaintiffs assert that neither the Third Circuit nor this court have addressed either the internal affairs exception or the securities exception. According to plaintiffs, "[t]he lack of decisions by [these courts], in the face of the vast number of actions filed continuously in the Delaware Court of Chancery by holders of securities of Delaware corporations, limited partnerships and other business entities based on Delaware state-law-based fiduciary duties and governance terms, in the more than a decade since CAFA's enactment, is

6

vivid evidence that such actions . . . are within the plain meaning of the CAFA

exceptions and the intent of Congress to exclude these matters from CAFA." (D.I. 7 at

4) And, indeed, all of plaintiffs' claims arise from the relationship between the holders

of the UDF III LP Units and the Partnership under Delaware law,[5] and relate to alleged

breaches of fiduciary duty by the General Partner and the Partnership's controllers[6] or

breaches of the Partnership Agreement under Delaware law.[7]

9. Defendants ground their opposition to remand on an overly broad reading of

the complaint and an overly narrow interpretation of the exceptions. Starting with

defendants' characterization of the complaint, although they concede that the complaint

"purports to be brought on behalf of a putative class of 'owners' or 'holders' of UDF III

limited partnership interests . . ., it is . . . replete with allegations of fraud,

misrepresentation and concealment ostensibly undertaken 'in order that new investor

capital could be raised through the sale of securities to retail investors, such as the

_____

[5]*See In re Activision Blizzard, Inc. S'holder Litig.,* 124 A.3d 1025, 1043-57 (Del. Ch. 2015) (under Delaware law, derivative claims, direct shareholder claims and dual attribute claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and restitution and disgorgement of obtained profits are claims associated with the rights carried by shares of stock and arise out of the relationship between the stock holder and the corporation).

[6]The claims for aiding and abetting breach of fiduciary duty, by legal definition, are likewise based on the alleged breaches of fiduciary duty by the General Partner and the Partnership's controllers under Delaware law. *See RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015). *See also Rubin v. Mercer Ins. Grp., Inc.*, 2011 WL 677466 (D.N.J. 2011), at *3.

[7]*See, e.g., In re Walt Disney Co. Deriv. Litig.,* 906 A.2d 27, 66 (Del. 2006) ("disloyalty in the classic sense (i.e., preferring the adverse self-interest of the fiduciary or of a related person to the interest of the corporation)"); *Wallace ex rel. Cencom v. Wood,* 752 A.2d 1175, 1180-82 (Del. Ch. 1999) (self-dealing by limited partnership's corporate general partner and its directors, officers, and affiliates).

7

Plaintiffs." (D.I. 15 at 11) According to defendants, these references to **why** defendants engaged in the alleged misconduct should be interpreted by the court as meaning that plaintiffs' claims "are not exclusively 'grounded in the terms of the security itself' . . . ; rather, the allegations of the Complaint make clear the Plaintiffs also contend that 'the transaction in which they had acquired . . . [their interests] . . . was tainted by fraud." (*Id.*)

10. The court disagrees with defendants' characterizations.[8] Notably, the source of the rights that plaintiffs' claims seek to enforce is either Delaware corporate law[9] or the Partnership Agreement. With respect to those breach of fiduciary duty claims based on Delaware corporate law (and as noted above), there can be no dispute that liability under the "internal affairs doctrine" "will typically be imposed upon directors . . . for such matters as the fraudulent . . . mismanagement of the corporation's affairs . . . and unlawfully profiting at the corporation's expense." Restatement (Second) of Conflict of Laws § 309, comment (a). "[C]ourts have consistently applied the internal affairs doctrine to claims for breach of fiduciary duty." *In re Textainer P'ship Sec. Litig.,* 2005 WL 1791559, at *5 (referencing, e.g., *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 n.10 (3d Cir. 2005)). The court concludes that plaintiffs' breach of fiduciary claims (counts I - IV) relate solely to the "internal affairs or governance" of the

---

[8]In other words, the court does not characterize plaintiffs' complaint as asserting "purchaser" claims or allegations.

[9]Unlike the circumstances in *Krueger v. Northwestern Mut. Life Ins. Co.*, 2010 WL 4677382 (N.D. Fla. 2010), the judge there holding that "the 'internal affairs' exception [did] not preclude federal jurisdiction over [the] action" because it was "not clear that solely Wisconsin law would apply to the claims asserted on Plaintiff on behalf of putative class members." *Id.* at *3.

8

Partnership and "arise[ ] under or by virtue of the laws of the State in which such . . . business enterprise is . . . organized." *In re Textainer P'ship Sec. Litig.,* 2005 WL 1791559, at \*5. The claims all assert that defendants "exercised their control [or aided and abetted such] to use UDF III and its capital and assets in . . . conflicted and self-dealing conduct . . ., at the wrongful expense of the UDF III and its limited partners." Plaintiffs' unjust enrichment claims (claims VIII and IX), which seek restitution and disgorgement of profits, are based on the same predicate breaches of fiduciary duty underlying the fiduciary duty claims and the aiding and abetting claims. Plaintiffs' breach of contract claims (counts VI and VII) relate to the Partnership Agreement, an instrument that creates and defines plaintiffs' securities within the meaning of the "securities exception." The Partnership Agreement expressly retains fiduciary duties and prohibits any contractual limitation or elimination of fiduciary duties; it is governed by and construed under Delaware law. (D.I. 8, ex. 1 at Articles 11.3(g) and 22.6) As the court interprets the complaint, plaintiffs' claims pertain solely to the "relationships inter se" of UDF III's general and limited partners, as those relationships are defined by Delaware corporate law and by the Partnership Agreement. *See In re Textainer,* 2005 WL 1791559, at \*6 (referring to *McDermott, Inc. v. Lewis*, 531 A.2d 206, 215 (Del. 1987)).

11. **Conclusion.** Because plaintiffs' class action solely involves claims that fall within the internal affairs and securities exceptions to CAFA, the court concludes that it lacks jurisdiction over the instant action under CAFA. Plaintiffs' motion to remand (D.I.

6) is granted.[10]  An appropriate order shall issue.

United States District Judge

---

[10]The court declines to award fees.   (D.I. 7 at 19)  Given that many of the issues raised at bar were a matter of first impression under the applicable precedential law, the court does not find that defendants lacked an "objectively reasonable basis" to remove, as required under 28 U.S.C. § 1447(c), as interpreted by the Supreme Court in *Martin v. Franklin Capital Corp.* 546 U.S. 132, 139 (2005).